IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

VERONICA COLBERT, Individually and on Behalf
of All Others Similarly Situated,

    Plaintiff,

v.                                                                                          Case No. 5:13-CV-4126-JTM-JPO

MONARCH TRANSPORTATION, LLC,

    Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Veronica Colbert, on behalf of herself and all others similarly situated, seeks damages against defendant Monarch Transportation, LLC for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. This matter is before the court on plaintiff's Motion for Conditional Certification of the Class Claims under § 216(b) of the FLSA (Dkt. 26). For the reasons stated below, plaintiff's motion is granted.

**I.**    **Factual and Procedural Background**

Defendant is a Kansas limited liability company that provides transportation services for various health and nursing care facilities in and around Topeka, Kansas. Hired in May 2010, plaintiff initially worked as a Transportation Aide, a fulltime, hourly position. The position was considered non-exempt for FLSA purposes. Plaintiff alleges that, although she routinely worked

more than her scheduled forty hours per week, and was thus entitled to overtime, defendant regularly only compensated her for forty hours.

According to plaintiff, defendant's general policy and practice is to "willfully deny its hourly, non-exempt employees overtime pay for all hours worked including hours worked beyond forty (40) in a workweek." Dkt. 51, ¶ 31.  Defendant does this by: (1) automatically deducting a 30-minute meal period from each hourly employee's shift; and (2) requiring hourly Transportation Aides to work twelve or more on-call hours each week without paying overtime premiums.  Based on these policies, defendant requires its employees to work off the clock, including time before and after their shifts and during the mandatory unpaid meal break.  None of this off-the-clock time is reflected in the employees' paychecks.

Defendant admits, in its Response brief, that it operates under the following policies with regard to automatic mealtime deductions and on-call compensation:

> **Meal Breaks**
> As an hourly employee working six (6) or more hours you must take a thirty (30) minute meal break near the middle of the shift.  This time will be automatically deducted from your time each workday.  During the 30-minute lunch break, the employee is to be relieved of all duties.  Therefore, employees are not to eat at their stations.
>
> In addition, any hourly employee that has his/her lunch break interrupted for any work-related reason must fill out the "Change in Hours Worked" form so he/she will be properly paid . . . .
>
> **On-Call Runs**
> When a Transportation Aide is on-call, Monarch pays a flat fee of $30.00 to the Transportation Aide on-call, regardless of whether or not a run is made.  If an employee of Monarch is called upon to make an on-call run, the employee is expected to report to work and be available within thirty (30) to forty-five (45) minutes of the time employee is paged.  If a Transportation Aide with Monarch makes one run while on-call, the employee receives just the $30.00 flat fee.  However, for each subsequent on-call run that the Transportation Aide makes, the employee receives an additional $15.00.

> If there is an unusual circumstance, or an on-call run goes longer than expected, an employee of Monarch is expected to report his or her time and the circumstances surrounding the on-call run to Mr. McGinnis to see if extra pay is necessitated. All employees are made aware of the on-call policies of Monarch . . . .

Dkt. 39, at 3-5.

On December 17, 2014, plaintiff filed, on behalf of herself and others similarly situated, an FLSA Collective Action First Amended Complaint against defendant. Dkt. 51.[1] She also alleges individual claims for violations of Kansas common and wages laws, K.S.A. §§ 44-301 *et seq.*, commonly referred to as the Kansas Wage Payment Act ("KWPA"), as well as unjust enrichment/quantum meruit and breach of contract. Dkt. 51. Defendant filed its Answer and Affirmative Defenses on January 6, 2015. Dkt. 55.

## II.     Legal Standard

The FLSA permits legal action "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action under Federal Rule of Civil Procedure 23, a collective action "includes only those similarly-situated individuals who opt-in to the class." *Hadley Wintrust Mortg. Corp.*, 2011 U.S. Dist. LEXIS 113968, at *3 (D. Kan. Oct. 3, 2011) (citing 28 U.S.C. § 216(b)).

The FLSA, however, does not define what it means to be "similarly situated." The Tenth Circuit has therefore adopted a two-step, *ad hoc* approach to analyzing § 216(b) claims. *See*

---

[1] Plaintiff initially filed, on behalf of herself and others similarly situated, an "FLSA Collective and Rule 23 Class Action Complaint" against Monarch and Midwest Health Management, Inc., alleging that the corporations were her joint employers. Plaintiff and one additional opt-in plaintiff asked this court to conditionally certify two classes: (1) all hourly employees who worked for Monarch's and Midwest's care facilities during the last three years, and (2) all hourly Transportation Aides, regardless of title, who worked on-call time for Monarch and Midwest during the last three years. Dkt. 1. Subsequent to this filing, the court held a telephonic hearing with the parties and ordered additional briefing on the issue of the defendants' joint employer status. After some discussion, the parties agreed that plaintiff would limit her case to her individual and collective claims against Monarch on behalf of herself and similarly situated Transportation Aides. Dkt. 49, ¶ 3.

*Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). In the initial "notice stage," the court "determines whether a collective action should be certified for purposes of sending notice of the action to potential class members." *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004). This stage "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102 (internal citations omitted). This standard is fairly lenient and typically results in conditional certification. *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1300 (D. Kan. 2000); *see also Thiessen*, 267 F.3d at 1103.

In the second stage, which occurs after discovery, the court applies a stricter standard to determine whether the opt-in plaintiffs are similarly situated and reviews the following factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations . . . ." *Thiessen*, 267 F.3d at 1103.[2]

### III. Analysis

Plaintiff's current motion asks the court to conditionally certify the action as a collective action under § 216(b) for the following two classes:

> All hourly Transportation Aides, Drivers, and others in like positions who worked on-call for Defendant at any time during the last three years (the "on-call" collective action members).

> All hourly, non-exempt employees who worked for Defendant and experienced an automatic meal break deduction at any time during the last three years (the "off-the-clock" collective action members).

---

[2] *Thiessen* involved an ADEA claim and therefore provided a fourth factor to be considered: "whether plaintiffs made the filings required by the ADEA before instituting suit." 267 F.3d at 1103. A majority of cases that quote *Thiessen's* factors omit the fourth one in cases not dealing with the ADEA.

Dkt. 51, ¶¶ 11, 16.  She further requests that the court: (1) order defendant to provide the names, addresses, social security numbers, and telephone numbers of putative class members in a format suitable for mailing; (2) designate her as class representative and her counsel as class counsel; and (3) approve her proposed notice of claim and right to opt in.  Dkt. 51, at 10-11, 12-13.

The parties agree that the pending motion is before the court at the first stage of review. Plaintiff asserts that she has met the lenient threshold standard for certification because defendant admits, in its Response, that all Transportation Aides and/or hourly employees are subject to the policies at issue.  Dkt. 49.  In support of her motion, plaintiff submitted only her own declaration, which sets forth the following relevant allegations:

(1) Pursuant to defendant's policy, hourly employees were subject to a 30-minute unpaid meal period that was automatically deducted from each shift of six hours or more, even if that shift was interrupted with work

(2) Plaintiff's meal break was interrupted with work and/or other job duties multiple times during her employment, but the full 30 minutes was still deducted from her pay

(3) Plaintiff has personal knowledge, through her own observations, that other hourly employees performed work during their unpaid meal breaks.

(4) Plaintiff was required to work twelve (12) or more on-call hours each week.  These on-call hours regularly caused plaintiff to perform in excess of forty (40) hours of work per week, but she did not receive overtime pay

(5) Other Transportation Aides with whom plaintiff worked were also required to perform on-call work for which they were not paid overtime compensation.  Plaintiff knows this because of her discussions with her coworkers and her supervisors during employee team meetings.

Dkt. 27-9, at 2-3.

While it admits to having the policies (but not, to be clear, that any employee was denied proper and earned compensation *because of* these policies), defendant focuses its opposition on the fact that plaintiff's declaration contains very conclusory and general allegations and that she

5

fails to provide the court with any names of any potential opt-in plaintiffs, let alone actual declarations of consent to opt-in. Dkt. 54, at 5.[3] In support of its position, defendant draws upon the 2005 decision in *Stubbs v. McDonald's Corporation*, 227 F.R.D. 661 (D. Kan. 2005).

The plaintiff in *Stubbs* was employed as a salaried second assistant manager in three of defendant's restaurants. 227 F.R.D. at 663. After leaving his employment, the plaintiff brought a class action suit alleging the defendant's willful violations of the FLSA, which stemmed from the defendant's improper classification of assistant managers as "exempt" rather than "non-exempt" for FLSA purposes. *Id*. According to the plaintiff, the defendant willfully and purposefully understaffed its restaurants, thereby forcing its exempt employees (namely the first and second assistant managers) to perform the duties of an hourly employee in excess of forty hours per week without overtime compensation. *Id*. at 665. The plaintiff therefore sought certification of the following class: "[a]ll current and former first and second assistant managers, who were employed by defendant in such a position within the last three years, and who worked in one or more restaurants owned and operated by defendant within its Kansas City region." *Id*.

In support of his motion, the plaintiff submitted his own affidavit and that of his wife, who was employed by the defendant in its regional office as a human resources coordinator. *Id*. at 664. The plaintiff failed, however, to provide any names, much less any affidavits, of other first or second assistant managers who shared the same job duties as himself and were the victims of the defendant's purported policy of understaffing its restaurants and not providing

---

[3] Plaintiff may disagree with this assessment, as she did provide, in her initial Motion to Certify against both Monarch and Midwest Health, the names and opt-in declarations of thirteen individuals who claimed to have also been subject to defendant's timekeeping policies and were denied straight and overtime pay. *See* Dkt. 27-13. However, a review of these opt-in declarations reveals that these individuals were employees of Midwest Health, not defendant, and had vastly different job titles/descriptions than plaintiff, including licensed practical nurse, cook/dietary aide/assistant manager, medication aide/administrative assistant, certified nursing assistant, universal worker, dietary aide, medication aide, certified medical assistant, and bus driver. Dkt. 27-13. The court therefore does not consider any of these opt-in declarations relevant to plaintiff's current Motion to Certify pending only against defendant.

overtime compensation *Stubbs*, 227 F.R.D. at 666.  In contrast, the defendant provided the affidavits of five of its first and second assistant managers in the restaurants at issue, each which stated that "while their role as first or second assistant manager occasionally or oftentimes required them to perform duties normally done by hourly employees for short periods of time, they continued managing employees and supervising the restaurant while doing so." *Id*.

Given the plaintiff's lack of support and the fact that he did not present any definite opt-in plaintiffs or even the names of those who *might* seek to be opt-in plaintiffs, the court denied conditional certification.  *Id*.  The court held that while the lenient notice-stage standard "does not require, for example, plaintiff to come forward with evidence of actual proof of a decision, policy, or plan, the initial *ad hoc* FLSA class certification standard *does* require plaintiff to provide more than his own speculative allegations, standing alone." *Id*. (emphasis added).

The situation before the court is at least partly identical to that in *Stubbs*.  As noted above, plaintiff has failed to come forward with the names of any potential opt-in plaintiffs, much less any affidavits submitted by those wishing to opt-in.  In contrast, defendant has come forward with the affidavits of three Transportation Aides that directly rebut plaintiff's allegations.  Each of these affidavits thoroughly outline the employee policies in question and directly oppose plaintiff's assertions that defendant denies any pay, overtime or otherwise, as a result of these policies.  Dkts. 39-4, 39-5, 39-6 (affidavits and declarations of Angelique Esquibel, Maria Huske, and Steven Esquibel).

However, plaintiff here has something that the plaintiff in *Stubbs* did not have: an admission by defendant that the policies in question *were*, in fact, the policies of the employer. This admission is enough to satisfy the notice-stage standard that plaintiff present "substantial

7

allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102.

In *Pegues v. Carecentrix, Inc.*, 2013 U.S. Dist. LEXIS 64224 (D. Kan. May 6, 2013), the plaintiff filed a putative collective action under the FLSA claiming that the defendant employer required non-exempt employees to perform work off the clock, without pay. 2013 U.S. Dist. LEXIS 64224, at *1. The plaintiff, a Medicare Assessment Coordinator, was notified via email that she, and all other similarly situated employees, was required to complete a variety of critical tasks before clocking in via the defendant's time-tracking software. *Id*. However, according to the plaintiff, such employees were also required to complete a variety of critical tasks *before* clocking in, including arriving at their workstations, preparing those workstations, logging onto computers, logging into the defendant's network, and booting up the timekeeping software. *Id*. at *5-6. In her complaint, the plaintiff alleged that the defendant failed to pay class members "for the time they spend logging in and out of their computers, the time they spend with any updates to the computer program, and the rest of the time they spend performing integral and indispensable preliminary and postliminary work activities." *Id*. at *6.

When the plaintiff inquired about the timekeeping system and its failure to track these extra minutes, she received a response from the corporate office instructing her to be at work "a few minutes early every morning to get [her] computer up and running in order to be logged in at [her] start time, this typically doesn't take more than 2-3 minutes. It takes less time when coming back from lunch." *Pegues*, 2014 U.S. Dist. LEXIS 64224, at *6. The plaintiff was also informed that she would only be paid for the actual time she had logged in the timekeeping system. *Id*. Arguing that those statements constituted company policy, the plaintiff sought collective certification for all current and former customer service representatives. *Id*. at *6-7.

Much like plaintiff here, the plaintiff in *Pegues* failed to submit any affidavits of current or former employees making similar allegations. It was because of this lack of factual support that the court denied her request to conditionally certify claims on behalf of all of the defendant's current and former customer service representatives who worked in *all* of the defendant's call centers, not just the plaintiff's call center. *Id*. at *8-10. However, the court *did* conditionally certify the plaintiff's claims on behalf of those current and former employees located in the plaintiff's Overland Park office, holding that, because of the emails, she "presented sufficient evidence to show that her unit may have been subjected to FLSA violations . . . ." *Id*. at *9.

Again, while plaintiff here offers no affidavits or consents to opt-in of her fellow employees, defendant *admits* that it had and operated under the policies in question. Surely if an email exchange solely between the affected employee and her employer satisfies the lenient threshold of *Thiessen*, an official acknowledgement that all employees were subject to a "single decision, policy, or plan" is sufficient to do the same.

Likewise, in *Hadley v. Wintrust Mortgage Corporation*, 2011 U.S. Dist. LEXIS 113968 (D. Kan. Oct. 3, 2011) *vacated on other grounds* 2011 U.S. Dist. LEXIS 157187 (D. Kan. Nov. 4, 2011), the plaintiff, an underwriter in the defendant employer's Overland Park office, filed a complaint alleging that the defendant's pay policies and practices violated the FLSA. 2011 U.S. Dist. LEXIS 113968, at *1. More specifically, the plaintiff argued that the defendant's underwriters were misclassified as exempt employees for purposes of FLSA provisions. *Id*. at *2-3. Although the plaintiff offered no affidavits of opt-in plaintiffs, the parties did engage in very limited discovery whereby the defendant admitted that all of its underwriters were classified as exempt from the overtime pay requirements and had thus not been paid overtime. *Id*. at *6-7.

9

While the court acknowledged that a plaintiff seeking conditional certification typically submits affidavits of support, it concluded that a failure to do so was not fatal to the plaintiff's claims, noting that the Tenth Circuit "has not required any quantum of evidence to be produced at the notice stage." *Id*. at *8.  The court therefore held that the fact that the plaintiff alleged, and the defendant affirmed, that the underwriters: (1) shared similar job duties, and (2) were classified as exempt employees not entitled to overtime compensation under the FLSA was sufficient to satisfy the notice-stage standard for class certification.  *Id*. at *8-9.

Likewise, here, plaintiff has alleged that she is similarly situated to all of defendant's non-exempt hourly employees, Transportation Aide or otherwise.  She further alleges, and defendant *admits*, that all of these employees were subject to the same policies and procedures with regard to automatic meal-time deductions and on-call practices.  "Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy, or plan."  *Hadley*, 2011 U.S. Dist. LEXIS 113968, at *8 (quoting *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 433-34 (D. Kan. 2007); *see also McCaffrey v. Mortg. Sources Corp.*, 2009 U.S. Dist. LEXIS 77028, at *9 (D. Kan. Aug. 27, 2009); *Gipson v. Southwestern Bell Tel. Co.*, 2009 U.S. Dist. LEXIS 33478, at *11-12 (D. Kan. Apr. 20, 2009). Here, there is not only plaintiff's allegation that defendant engaged in a pattern or practice of not paying overtime, but an admission by defendant that the policies in question do indeed exist. While it undoubtedly would have been helpful to plaintiff to have the opt-in affidavits of fellow employees, and while it will be plaintiff's ability to secure these opt-in plaintiffs that will assuredly be in question at the second stage, the affidavits are not altogether necessary at this early stage of the proceedings.

The court therefore finds that plaintiff's allegations, *combined with* the fact that defendant admitted to having the policies in question, is sufficient to satisfy the lenient notice-stage standard for class certification.

## IV.     Notice to Class Members

**A.     Content of Proposed Notice of Claims and Consent to Join**

The benefits of a collection action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Plaintiff submitted a Proposed Notice of Claims and Consent to Join for the Court's review. "District courts have discretion to monitor the preparation and distribution of collective action notices." *Hadley*, 2011 U.S. Dist. LEXIS 113968, at *9 (citing *Hoffmann-La Roche,* 493 U.S. at 172). In exercising this discretion, the court must "ensure fair and accurate notice and should refrain from altering the proposed notice absent strict necessity." *Id*. (citing *Sloan v. Renzenberger*, 2011 U.S. Dist. LEXIS 41018, at *3 (D. Kan. Apr. 15, 2011)). Defendant has not submitted any objection to plaintiff's proposed notice and consent. After thorough review, the court approves plaintiff's proposed Notice of Claims and Consent to Join.

To facilitate mailing of the notice, defendant, within ten (10) days of this order, shall provide to plaintiff a list of all employees constituting the class, with their last known addresses, phone numbers, and dates of employment in an agreeable format for mailing. The court denies plaintiff's request that defendant also provide the social security numbers of these potential class members.

### B.     Posting Notice at Monarch's Office

Plaintiff further requests that defendant "conspicuously post the notice by the time clock used by each currently employed putative class member until the opt-in period closes."  Dkt. 49, at 3.  She provides no support for or justification as to why such a posting is necessary.  Potential plaintiffs reached by such a posting – current Monarch employees -- are the same employees for whom defendant most likely has current address information.  The court therefore denies this request.

**IT IS THEREFORE ORDERED** this 23rd day of January, 2015, that plaintiff's Motion for Conditional Certification of Class Claims under §216(b) of the FLSA (Dkt. 26) is hereby **GRANTED**, and a plaintiff opt-in class is hereby certified as set forth herein.  Plaintiff is authorized to send out a notice, as set forth herein, to each potential member of the class.

**IT IS FURTHER ORDERED THAT** defendant, within ten (10) days of this order, provide to plaintiff a list of all employees constituting the class, with their last known addresses, phone numbers, and dates of employment in an agreeable format for mailing.

**IT IS FURTHER ORDERED THAT** plaintiff Veronica Colbert is hereby designated class representative and her counsel, Rowdy Meeks Legal Group LLC and Davis George LLC, is hereby designated as class counsel.

**IT IS FURTHER ORDERED** that plaintiff's request that defendant conspicuously post the notice by the time clock used by each currently employed putative class member until the opt-in period closes is hereby **DENIED**.

s/J. Thomas Marten
J. THOMAS MARTEN,
CHIEF JUDGE